# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

KEYANA CHRISTINE BAKER,

                                     Plaintiff,

       v.                                           5:14-CV-1243
                                                   (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
TOMASINA DIGRIGOLI, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Thomas J. McAvoy, Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   **PROCEDURAL HISTORY**

Plaintiff "protectively filed"[1] an application for Supplemental Security Income ("SSI") benefits on May 20, 2011. (Administrative Transcript ("T") 22, 75, 131-134). Plaintiff alleged disability, beginning on March 1, 2011 involving, *inter alia*, lupus, back pain, and joint pain. (T. 22, 139, 143).

Plaintiff's application was initially denied on September 14, 2011. (T. 22, 74-

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

80).  On October 25, 2012, Administrative Law Judge ("ALJ") Richard E. Guida conducted a hearing, at which plaintiff and a vocational expert ("VE") testified.  (T. 22, 47-73).  The ALJ denied plaintiff's applications in a decision dated January 16, 2013 (T. 22-34), which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 11, 2014.  (T. 1-6).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which

2

significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

As of the date of the administrative hearing in October 2012, plaintiff was 33 years old. (T. 47, 75). Plaintiff completed tenth grade and reported limited prior employment as a teacher's aide for a Head Start Program between 2005 and 2010, when she quit because of pain in her legs, hands, and back, and because she was pregnant. (T. 52-53, 66-68, 135, 144). Plaintiff lived with her two children, ages twelve and two at the time of the hearing, in a two-family home owned by and shared with her mother. (T. 53-54, 142, 790).

4

Plaintiff testified about her symptoms and limitations resulting from, *inter alia*, chronic lower back pain, joint pain related to Lupus or connective tissue disorder, and depression. She stated that she has regular help from family in caring for her children. (T. 54, 62, 152). Plaintiff was able to care for herself, with limitations, such as using a shower chair and getting help with tying her shoes or manipulating buttons. (T. 57, 62, 152-153). She did chores around the house, often with help from family, and with significant limitations on her ability to stand for a prolonged period. (T. 152, 153-154, 581) Plaintiff testified that she could not stand or sit for more than ten to fifteen minutes continuously without experiencing back pain which required her to change positions or lie down. (T. 61, 152, 156-57). She stated that, because of her depression, she suffers loss of motivation, has trouble concentrating, and cannot focus. (T. 63-65).

Plaintiff was treated by Dr. Richard Zogby of Syracuse Orthopedic Specialists from September 2009 through November 2012 for, *inter alia*, chronic radiating low back pain, lumbrosacral radiculitis, and a herniated lumbrosacral disk. (*See, e.g.*, T. 506-512, 528-531, 539-542, 608-611, 726-729). Conservative treatment, including physical therapy, nerve blocks, and trigger point injections were ineffective in controlling her pain, but Dr. Zogby concluded that he could not recommend surgical treatment. (T. 58-60, 606, 631, 634-637, 726-728). Dr. Zogby noted that MRIs of plaintiff's lumbar spine revealed a small herniated disc at L5-S1 with an annular tear and "a high-intensity zone of inflammation there," but "no significant neurological impingement." (T. 728, 734-735). In October 2012, Dr. Zogby submitted a medical source statement opining that, during an eight-hour workday, plaintiff could only stand or walk for less than two hours and sit for four hours, and would be off task 20% of the

5

time. (T. 736-737). Dr. Zogby also concluded that plaintiff needed a job that permitted "shifting at will from sitting, standing or walking." (T. 736).

Since well before March 2011, plaintiff was treated by Dr. Mary Abdulky of Arthritis Health Associates, and others, for joint pain in her hands, knees, and back. (*See, e.g.*, T. 54-56, 459-463, 580, 585-586). Although plaintiff claimed to have a family history of lupus, Dr. Abdulky's ultimate diagnosis was mixed connective tissue disease with a rheumatoid arthritis overlap. (T. 54, 461, 580, 585-586).

In July 2011, plaintiff was examined by internal medicine consultant Tanya Perkins-Mwantuali, M.D. Dr. Perkins-Mwantuali noted a diagnosis of lupus or some connective tissue disease affecting the joints, and a history of low back pain with radicular component, not reproduced on examination. (T. 583). Dr. Perkins-Mwantuali opined that plaintiff's prognosis was "guarded," and that she had "moderate to severe limitation with lifting, pushing, pulling, bending secondary to low back pain and abdominal pain." (T. 584).

In December 2011, months after plaintiff filed her application for SSI benefits, she started treatment with Dr. Paul S. Cohen, and then with Paige Ouimette, Ph. D. of Psychological Health Care, for depression and anxiety. (T. 742-743, 754-757, 759-762, 789-798). In October 2012, Dr. Ouimette submitted a medical source statement, after meeting with plaintiff four times between March and June 2012, listing a diagnosis of adjustment disorder with depressed mood. (T. 723, 793). Dr. Ouimette opined, *inter alia*, that plaintiff would be unable to meet competitive vocational standards for maintaining regular attendance and punctuality within customary tolerances, completing a normal workday and workweek without interruptions from

psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods.  (T. 724).  The psychologist also concluded that, because of her impairments, plaintiff would be off task more than 20% of the workday and would miss more than four days of work per month.  (T. 725).

Plaintiff's brief has recited the medical and other evidence in considerable detail.  (Pl.'s Brief at 2-14, Dkt. No. 17).  ALJ Guida also discussed, at length, the evidence of record in his decision.  (T. 24-26, 27-32).  The Commissioner has incorporated, by reference, the facts alleged in plaintiff's brief, except for any legal references and conclusions, and the discussion of the evidence in the ALJ's opinion.  (Def.'s Brief at 1-2, Dkt. No. 21).   Rather than further reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   ALJ's DECISION

At step one of the sequential disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 20, 2011–her alleged onset date.  (T. 24).  The ALJ then found, at step two, that plaintiff had the following "severe" impairments:  mixed connective tissue disorder, degenerative disc disease, and obesity.  (T. 24).[2]  At step three, the ALJ found that plaintiff's impairments did not individually, or in combination, meet or equal any of the criteria of any section of the Listing of Impairments, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 26).

---

[2] The ALJ found that claimant's depression did "not meet the minimum 12-month duration requirement for severe impairments," and that other impairments alleged by plaintiff were also not "severe."  (T. 24-26).

The ALJ assessed plaintiff's RFC, and concluded that she retained the ability to perform "sedentary work" as defined in 20 C.F.R. § 416.967(a) "except with occasional postural movements [and] except for never climbing ladders, ropes, or scaffolds. (T. 26-33). While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ decided that the plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible, based primarily on a detailed review of the medical evidence. (T. 27-33).[3]

The ALJ gave "great weight" to the conclusions of consultative examiner Dr. Perkins-Mwantuali, and concluded that the range of limitations suggested by the consultant fell within the ALJ's RFC determination. (T. 31). The ALJ gave little weight to Dr. Zogby's opinion of "extreme limitations preventing all work." The ALJ found that Dr. Zogby's opinions over time were inconsistent, and that his very restrictive medical source statement was contradicted by his objective examination findings. (T. 31-32).

The ALJ also gave little weight to the opinion of Dr. Ouimette that plaintiff had mental limitations "that in effect would prevent [her] from employment." (T. 32). The ALJ concluded that Dr. Ouimette relied on plaintiff's claims regarding her limitations, and not on objective clinical evidence, and that Dr. Ouimette's limited treatment notes were not consistent with a severe mental impairment. The ALJ further found that the medical evidence did not support a finding that plaintiff had a mental impairment

---

[3] In a separate section of the report, the ALJ also assessed plaintiff's ability to perform activities of daily living and concluded that she only had mild limitations in that area. (T. 25).

lasting 12 months or more. (T. 32).

At step four, the ALJ found that plaintiff had no "past relevant work," based on her minimal earnings while a teacher's aide. (T. 33). At step five, the ALJ used Medical-Vocational Rule 202.16 as a framework and relied on a vocational expert's testimony to conclude that plaintiff's residual functional capacity permitted her to perform several other sedentary jobs which existed in significant numbers in the national and state economy. (Tr. 33-34, 68-71). Accordingly, the ALJ found that plaintiff was not disabled. (T. 34).

## V.     ISSUES IN CONTENTION

Plaintiff advances the following arguments:

(1)     The RFC assessment is not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and evidence, particularly the opinions of plaintiff's treating physicians. (Pl.'s Br. at 1, 16-22).

(2)     The credibility findings are unsupported by substantial evidence because the ALJ erred in analyzing required factors other than the medical evidence when assessing plaintiff's credibility. (Pl.'s Br. at 1, 22-23).

(3)     The ALJ's step-five determination is unsupported by substantial evidence because the ALJ relied upon VE testimony elicited by incomplete and unsupported hypothetical questions to find that there were other jobs in the national economy that plaintiff could perform. (Pl.'s Br. at 1, 23-24).

For the reasons stated below, this court concludes that the ALJ erred in evaluating the medical evidence, and finds that his RFC determination, particularly with respect to plaintiff's capacity for prolonged standing/walking and sitting and staying on task, was not supported by substantial evidence. As a result, the ALJ's evaluation of plaintiff's credibility, the ALJ's step-five analysis, and the ultimate

9

finding that plaintiff was not disabled, were tainted.  Accordingly, the court

recommends a remand for further administrative proceedings to properly assess the

medical opinion and other evidence and plaintiff's credibility in connection with the

Commissioner's RFC and disability determinations.

## VI.  RFC/TREATING PHYSICIAN/CREDIBILITY/STEP-FIVE ANALYSIS

### A.    Legal Standards

#### 1.    RFC

Residual functional capacity ("RFC") is "what [the] individual can still do

despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining

ability to do sustained work activities in an ordinary work setting on a regular and

continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for

five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386

(MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*,

198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y.

1999).  An ALJ must specify the functions plaintiff is capable of performing, and may

not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing,

*inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be

established when there is substantial evidence of each physical requirement listed in

the regulations.  *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y.

10

1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.   Treating Physician

"Under the treating physician rule, deference is given to the opinions of the physician who has provided the primary treatment for the patient." *Rugless v. Comm'r. of Soc. Sec.*, 548 F. App'x. 698, 699-700 (2d Cir. Dec. 19, 2013). "SSA regulations advise claimants that a treating source's opinion on the issues of the nature and severity of [their] impairments will be given 'controlling weight' if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2004). An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3.   Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the

11

substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 4. Step Five

At step five of the disability analysis, the burden of proof shifts to the ALJ to

demonstrate that there is other work in the national economy that plaintiff can perform. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). In the ordinary case, the ALJ carries out this fifth step by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). But if plaintiff has non-exertional impairments, and if those non-exertional impairments "significantly limit the range of work" permitted by his exertional impairments, the ALJ may be required to consult a vocational expert ("VE"). *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

If the ALJ does use a VE, he presents the expert with a set of hypothetical facts to determine whether plaintiff retains the capacity to perform any specific job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-277. Conversely, a VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. *See DeLeon v. Sec'y of Health and Human Servs.*, 734 F.2d. 930, 936 (2d Cir. 1984) (finding that, as a result of the ALJ's failure to present the full extent of the claimant's physical disabilities to a vocational consultant, the record provided no basis for drawing conclusions about whether the claimant's impairments rendered him disabled).

**B.    Analysis**

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

" . . . [T]he concept of sedentary work contemplates substantial sitting . . ., [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted). An "individual [who] may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4.

The ALJ determined that plaintiff had the RFC to perform less than a full range of "sedentary" work, but did not specify how long he thought plaintiff could stand, walk, or sit during an eight-hour workday. Nor did the ALJ discuss whether plaintiff would need to shift positions at will from sitting, standing, or walking. (T. 26). The hypothetical questions posed by the ALJ to the VE did not include any details regarding the plaintiff's abilities or limitations with respect to prolonged walking,

standing, or sitting. (T. 68-72). The VE testified at the hearing that employers typically tolerate only two or three unscheduled absences per month, and that a person who was off task more than 10% of the workday beyond scheduled breaks would not be capable of performing any job. (T. 70-71). In finding that there were other jobs in significant numbers in the national economy that plaintiff could perform, the ALJ presumably concluded that plaintiff would not exceed employers' tolerances for absences or being off task.

In his October 2012 medical source statement, plaintiff's treating orthopedic specialist, Dr. Zogby, made the following findings with respect to plaintiff's ability to walk, stand, and sit: she could only walk one city block without rest or severe pain; she could only sit still for 30 minutes at one time before needing to get up; she could only stand for ten minutes at one time before needing to sit down or walk around; during an eight-hour workday, she could only stand or walk for less than two hours and could only sit for about four hours; and she would need to shift positions *at will* from sitting, standing, or walking. (T. 736). Dr. Zogby also opined that, due to her impairments, plaintiff would be off task (*i.e.*, unable to maintain attention or perform at a consistent pace) 20% of the workday and would miss about three days of work per month. (T. 737-738). Dr. Ouimette, a psychologist who treated plaintiff on four occasions in 2012 opined, in his October 2012 medical source statement, that plaintiff would be off task more than 20% of the workday and would be absent from work four days or more because of her impairments or related treatment. (T. 725).

An ALJ's failure to articulate a specific function-by-function RFC is not per se error. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("remand is not necessary

merely because an explicit function-by-function analysis was not performed"). However, the ALJ's failure to specify the plaintiff's capacity for prolonged sitting, standing, and/or walking provides an inadequate basis for judicial review of whether the RFC determination was supported by substantial evidence. *See Cichocki*, 729 F.3d at 177 ("[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review"). *See also Beylo v. Astrue*, No. 10-CV-354 (WGY), 2012 WL 4491043, at *7, 9 (N.D.N.Y. Sept. 28, 2012) (the ALJ erred by not referencing what range of unskilled sedentary work plaintiff could perform, and by not discussing how long plaintiff could sit, stand, or walk); *Burton v. Colvin*, No. 6:12-CV-6347, 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) (the ALJ erred by failing to specify plaintiff's ability to sit, stand, walk, lift, carry, and bend during an eight-hour workday).

The opinion of Dr. Zogby, as corroborated by Dr. Ouimette's opinion, is clearly inconsistent with the ALJ's RFC determination that plaintiff could stay on task sufficiently and could perform sedentary work without further restrictions, particularly with respect to prolonged sitting. In explaining why he gave little weight to Dr. Zogby's restrictive medical source statement from October 2012, the ALJ pointed to purportedly inconsistent prior opinions of Dr. Zogby. (T. 31-32). In a November 2011 report, Dr. Zogby stated that plaintiff could lift a maximum of ten pounds[4] and "should

---

[4] In his October 2012 medical source statement, Dr. Zogby opined could occasionally lift and carry up to ten pounds. (T. 737). The doctor has been consistent in his opinion with respect to plaintiff's ability to lift and carry, which is consistent with an RFC for sedentary work.

be able to sit/stand at her discretion." (T. 610). While the latter statement is arguably ambiguous, it is not inconsistent with Dr. Zogby's October 2012 finding that plaintiff needed to be able to shift positions from sitting, standing, and walking at will and it does not address how long plaintiff could sit during the workday. The ALJ emphasized that, on May 19, 2011, two months after plaintiff's alleged onset date, Dr. Zogby signed a treatment record which opined that the plaintiff "is to return to work with no restrictions." (T. 32, citing T. 508). However, over the approximately 17 months between Dr. Zogby's May 2011 notation and his October 2012 medical source statement, plaintiff repeatedly tried physical therapy, nerve blocks, and trigger point injections, none of which alleviated her chronic, radiating lumbar spine pain. The fact that plaintiff's treating orthopedic specialist reached a more pessimistic conclusion about the extent of plaintiff's limitations following 17 months of unsuccessful conservative treatments does not provide the ALJ with a valid basis for rejecting Dr. Zogby's ultimate opinion, at least in the absence of other credible medical opinion supporting the ALJ's RFC findings. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion)).

The ALJ also contended that Dr. Zogby's ultimate medical opinions were invalid because they were not supported by his objective medical findings. (T. 32). Dr. Zogby's reports, from plaintiff's alleged onset date through October 2012, reported

generally consistent examination findings–the plaintiff walked with moderate pain; she had difficulty moving from seated to standing positions due to low back pain; she had mild to sometimes moderate tenderness over her lumbrosacral junction; her range of motion in her lumbar spine was reduced moderately in all directions; she had pain with all directions of movement; her gait was normal; and straight leg raising test was negative.[5] (T. 507-508, 605-606, 609-610, 613, 616, 619, 727). Plaintiff's April 2012 MRI showed a small herniated disc at L5-S1 with an annular tear and "a high-intensity zone of inflammation there," but "no significant neurological impingement" (T. 728, 734-735)–results that Dr. Zogby once characterized as "essentially normal, with only minimal disk bulge but no canal or foraminal stenosis" (T. 606).

After plaintiff endured three years of constant radiating lower back pain and "failed multiple conservative measures" (T. 727, 728), Dr. Zogby reached a medical conclusion, as plaintiff's treating physician, about the extent of her limitations, *inter alia*, with respect to prolonged sitting and staying on task. Absent contrary medical opinion evidence, the ALJ cannot substitute his judgment for that of the treating doctor as to whether the extent of plaintiff's limitations were consistent with the doctor's examination findings. *See, e.g., Gray v. Chater*, 903 F. Supp. 293, 300 (N.D.N.Y. 1995) (substantial evidence did not support the ALJ's finding that plaintiff could perform the full range of sedentary work where there was no medical opinion evidence that the plaintiff could stand for two hours a day, as might be required in a sedentary

---

[5] "The Straight Leg Raising (SLR) test has been used as the primary test to diagnos[e] lumbar disc herniations . . . ." Majlesi J, Togay H, Unalan H, Toprak S., *The sensitivity and specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation*, http://www.ncbi.nlm.nih.gov/pubmed/18391677 .

job; the ALJ resorted to distinguishing away the contrary medical opinion evidence which provided, at best, a lack of definitive evidence that the plaintiff could perform sedentary work); *Beylo v. Astrue*, 2012 WL 4491043, at *7-8, 10 (remanding for a proper determination of whether plaintiff had the capacity to sit, stand, or walk consistent with the full range of sedentary work, given the absence of any medical opinion evidence indicating that plaintiff had the capacity to stand for two hours and sit for more than six hours).

The only medical opinion evidence that the ALJ cites in support of his RFC, is that of consultative examiner, Dr. Perkins-Mwantuali. (T. 29-30, 31). Dr. Perkins-Mwantuali made the following observations about plaintiff during a single examination: she appeared "uncomfortable," but walked with normal gait and was able to perform a full squat and walk on her heels and toes; she needed no assistance with changing or getting on or off the examination table; she had some tenderness and limited range of motion in her lumbar spine; and straight leg raising testing was negative. (T. 582-583). As noted earlier, Dr. Perkins-Mwantuali opined that plaintiff's prognosis was "guarded" and that she had "moderate to severe limitation with lifting, pushing, pulling, bending secondary to low back pain and abdominal pain." (T. 584).

Dr. Perkins-Mwantuali offered no conclusion about the plaintiff's capacity for prolonged walking, standing, or sitting, or whether she would need to change positions at will because of her lower back pain. The omission of any conclusion regarding prolonged sitting or standing could not have been reasonably construed by the ALJ as a conclusion that plaintiff satisfied the sitting or standing requirements of sedentary

work, without seeking clarification from the doctor.  See, e.g., *Vongsouvanh v. Comm'r of Soc. Sec.*, No. 6:13-CV-1581 (TJM/ATB), 2015 WL 926200, at *10 (N.D.N.Y. Mar. 3, 2015) (the omission of any conclusion from the consulting examiner regarding prolonged sitting could not have been reasonably construed by the ALJ as a conclusion that plaintiff could sit for six hours in an eight-hour day); *DiVetro v. Comm'r of Social Sec.*, No. 5:05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported); *Tricic v. Astrue,* No. 6:07-CV-997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (the ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing, and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time).

Even if the consulting internal medicine doctor had implied an opinion that the plaintiff had no limitations with respect to sitting or standing, that would not have provided substantial evidence to support the ALJ's rejection of the opinion of an orthopedic specialist who had treated plaintiff for several years.  *See, e.g.*, *Murphy v. Comm'r of Soc. Sec.*, No. 3:13-CV-960 (GTS/ATB), 2015 WL 64440, at *9 (N.D.N.Y. Jan. 5, 2015) (the ALJ erred in finding that the plaintiff could sit for six hours in an eight-hour workday without any further limitation, by selectively relying on a consulting doctor who saw plaintiff once, and by rejecting contrary medical evidence

from other sources, including a treating physician); *DiVetro v. Commissioner of Social Sec.*, 2008 WL 3930032, at *12 (consulting examiner's opinion that plaintiff has no "gross limitation" in her ability to sit does not support the ALJ's finding that plaintiff could sit for eight hours in a given workday); 20 C.F.R. §§ 404.1527(c)(2)(I) & (c)(5), 419.927(c)(2)(I) & (c)(5) (Commissioner will generally give more weight to opinions of treating sources who have treated plaintiff for a prolonged period and/or who are specialists whose opinions relate to their area of medical specialty).[6]

In sum, this court concludes that the ALJ erred in his evaluation of the medical evidence, particularly that of plaintiff's treating sources. The ALJ's RFC analysis, which apparently assumed that plaintiff could sit for approximately six hours during a workday without further limitations, was not supported by substantial evidence. As noted above, the ALJ's finding regarding the credibility of plaintiff's statements about her symptoms and limitations, was largely based on his analysis of the medical evidence. Because the ALJ erred in substituting his lay opinion for the competent medical opinions of record, his credibility finding was also flawed. *See, e.g.,*

---

[6] Although the ALJ discussed plaintiff's activities of daily living (T. 25, 27-28), that discussion did not support the inference that plaintiff was capable of prolonged sitting required to perform sedentary work. "[I]t is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (claimant's daily activities–including cleaning the house, watching television and playing video games, cooking simple meals, and shopping for groceries–did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he could not sit for more than 30 minutes to an hour without standing up) (Rep't-Rec.), *adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011). *See also, Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) (the ALJ erred when he concluded that plaintiff could meet the sitting requirements of sedentary work because she cooked and shopped for herself, used public transportation, and managed to remain seated for one long plane ride); *Murphy v. Comm'r of Soc. Sec.*, 2015 WL 64440, at *10.

*Vongsouvanh v. Comm'r of Soc. Sec.*, 2015 WL 926200, at *10. The ALJ relied on his erroneous RFC finding in questioning the VE, which tainted the ALJ's analysis at step five, as well as his ultimate determination that plaintiff was not disabled. The hypothetical questions to the VE, based on the assumption that plaintiff could meet the requirements of sedentary work for prolonged sitting without frequent changes of position, was not supported by substantial evidence. *See, e.g., Beylo v. Astrue*, 2012 WL 4491043, at *11; *DiVetro v. Comm'r of Social Sec.*, 2008 WL 3930032, at *13.

On remand, the Commissioner must properly evaluate the medical opinion and other evidence, with due deference to treating sources. The Commissioner should re-assess plaintiff's credibility based on a proper evaluation of the medical evidence and the other factors specified in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Commissioner must set forth an RFC determination, and explain the basis for that determination, with sufficient specificity to allow meaningful review. And, the analysis of the Commissioner at step five should be based on a properly-determined RFC finding which accounts for all of plaintiff's limitations.

## VII.  <u>NATURE OF REMAND</u>

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

22

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**

and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a

proper evaluation of the medical opinion and other evidence, an appropriate

determination of plaintiff's residual functional capacity, and other further proceedings,

consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk

of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS**

**WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d

Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  February 1, 2016

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**